UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| HELEN D. LITTLE, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | CASE NO.: 3:12-CV-352-TLS |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) ) ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

The Plaintiff, Helen D. Little, brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final decision denying application for disability insurance benefits. On July 5, 2012, this Court referred the matter to Magistrate Judge Christopher A. Nuechterlein to prepare a report and recommendation. After the submission of the parties' briefs, Magistrate Judge Nuechterlein filed a Report and Recommendation [ECF No. 14] on February 5, 2013, recommending that the Court deny the Plaintiff's request for remand to the Administrative Law Judge (ALJ) for further proceedings. The Magistrate Judge reported that the ALJ gave proper weight to the medical opinion of Dr. Stephen Ribaudo. He further opined that the ALJ's credibility determination was not patently wrong. Accordingly, the Magistrate Judge concluded that the ALJ's decision was supported by substantial evidence and was free of legal error, and he recommended that the Commissioner's decision be affirmed.

On February 22, the Plaintiff filed her Objections to the Magistrate Judge's Report and Recommendation [ECF No. 15] requesting that the Court reject the Report and Recommendation findings, sustain the Plaintiff's objections, and reverse and remand to the ALJ for further administrative proceedings. The Defendant did not respond to the Plaintiff's Objections.

Because the Plaintiff has objected to the Report and Recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## BACKGROUND

Applying the familiar five-step process for determining whether an applicant meets the definition of disability contained in the Social Security Act, *see Craft v. Astrue*, 539 F.3d 668, 673–74 (7th Cir. 2008); 20 C.F.R. § 404.1520, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date, had severe physical impairments that did not meet a listing, and maintained the residual functional capacity (RFC) to perform work activity that: allowed her to alternate between sitting and standing; required no more than 30 minutes at a time or 4 hours total of standing or walking; required only occasional reaching or extreme postures like stooping, kneeling, and bending; required lifting of no more than 20 pounds occasionally and 10 pounds frequently; did not expose her to hazards, heights, or moving vehicles; and did not require close regimentation of production so that she would have flexibility regarding the timing and pace of work.

In arriving at this RFC, the ALJ gave "some weight but not great weight" to the opinions expressed by Dr. Ribaudo. (ALJ Decision 7, R. 29.) The ALJ also noted that the evidence did not support the extreme degree of pain the Plaintiff alleged that she suffered. The ALJ determined, based on the testimony of a vocational expert, that the Plaintiff's RFC allowed her to perform

jobs that existed in significant number in the economy, thus denying the Plaintiff's claim at step five of the analysis.

The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner, *see* 20 C.F.R. § 404.981, and the Plaintiff initiated a timely action for judicial review. The Report and Recommendation and the Plaintiff's Objections raise the following issues for this Court's consideration: (1) whether the ALJ properly evaluated the medical opinion of Dr. Ribaudo; and (2) whether the ALJ properly evaluated the credibility of the Plaintiff's testimony regarding her limitations, including her extreme pain. Included in the first issue is whether the ALJ adequately supported the RFC findings.

**DISCUSSION**

A reviewing court will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and the court will not reweigh evidence or substitute its judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). The ALJ must build a "logical bridge" between the evidence and his conclusions. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Even if "reasonable minds could differ" about whether a claimant is disabled, the Court will affirm the ALJ's denial of benefits so long as the decision has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quotation marks omitted).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if

she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that she is not only unable to do his previous work but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A claim of disability is determined under a five-step sequential analysis. *Craft*, 539 F.3d at 673.

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's [RFC] and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Id.* at 674. The applicant bears the burden of proof in each of the first four steps. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The government bears the burden of proof at the fifth step and must present evidence establishing that the applicant possessed the RFC to perform work that exists in a significant quantity in the national economy. 42 U.S.C. § 423(d)(2)(A); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

Here, the findings being challenged are those related to the ALJ determination of the Plaintiff's RFC, which is the work the Plaintiff could still do on a regular and continuing basis

4

despite her physical impairments and limitations. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008). When assessing the work a person can perform despite his or her limitations, an ALJ looks at the relevant medical evidence, as well as statements from others or from the claimant regarding the limitations that result from pain and other symptoms. 20 C.F.R. § 404.1545

**A.      Dr. Ribaudo's Opinion**

An ALJ is tasked with evaluating opinion evidence when making a determination of disability. A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). An ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott*, 647 F.3d at 739. Even when the treating physician's opinion does not deserve "controlling weight," the ALJ must consider certain factors—namely (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) how supportable the doctor's medical opinion is; (4) how consistent the doctor's opinion is with the record; (5) the doctor's specialization; and (6) other factors that might support or contradict the doctor's opinion—to determine what weight to give the opinion. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

The Plaintiff argues that the ALJ should have given Dr. Ribaudo's opinion controlling weight because it was supported by appropriate clinical and diagnostic findings, and was not contradicted by any other substantial evidence. The Plaintiff also asserts that, even if the opinion

5

was not controlling, the ALJ erred when he failed to consider the checklist of factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to determine what deference to give to Dr. Ribaudo's opinion. Courts in the Seventh Circuit have criticized Social Security decisions in which the presiding ALJ failed to address the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2) after finding that a treating source's opinion was not entitled to controlling weight. *See, e.g., Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (reversing where the ALJ did not explicitly address the checklist of factors, the proper consideration of which may have caused the ALJ to accord greater weight to the doctor's opinion); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision for failing to address the "required checklist of factors" and remanding with instructions to afford the plaintiff's treating psychiatrist's opinion controlling weight). Although an ALJ is required to consider the factors set forth in 20 C.F.R. § 404.1527(c)(2), there is no requirement that every factor be discussed explicitly. *See Hanson v. Astrue*, No. 10-C-0684, 2011 WL 1356946, at *12 (E.D. Wis. Apr. 9, 2011) ("It is true that the regulation requires the ALJ to consider those six factors, but his decision need only include 'good reasons' for the weight given to the treating source's opinion rather than 'an exhaustive factor-by-factor analysis.'") (quoting *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, , at 804 (6th Cir. 2011)); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that the plaintiff "cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion"); *Brown v. Barnhart*, 298 F. Supp. 2d 773, 792 (E.D. Wis. 2004) (stating that there is no "*articulation* requirement for each and every factor" and that "ALJs are not required to produce prolix opinions containing checklists from all of the regulations"). "Rather, the ALJ must

sufficiently articulate her assessment of the evidence to assure the court that she considered the important evidence and to enable the court to trace the path of her reasoning." *Brown*, 298 F. Supp. 2d at 792.

The ALJ gave some weight to Dr. Ribaudo's opinions, finding that Plaintiff could not lift more than 10 pounds frequently and 20 pounds on occasion, that Plaintiff would need to alternate positions while working, that Plaintiff could not stand or walk for more than 30 minutes at a time, and that Plaintiff should avoid work hazards and unprotected heights. The ALJ further limited Plaintiff to work that did not require any close regimentation of production and allowed her flexibility regarding the time and pacing of her work. The opinions that the ALJ did not give weight to included those related to environmental limitations, and limitations on reaching, handling, or fingering. In arriving at these conclusions, the ALJ generally covered the ground of 20 C.F.R. § 404.1527(c)(2), and provided good reasons for the weight he assigned to the treating physician's opinion.

The ALJ's decision acknowledges that a bone density study shows that the Plaintiff suffers from osteoporosis of the hips, that X-rays showed degenerative changes of the Plaintiff's lumbar and cervical spine, and that a hip arthrogram MRI showed labral sulcus versus incomplete labral tear and cartilage defect at the superolateral femoral head. The ALJ noted that Dr. Ribaudo had been treating the Plaintiff for pain management for about seven months when he completed a Multiple Impairment Questionnaire. The ALJ gave Dr. Ribaudo's opinion, contained in the eight-page Questionnaire, "some weight." In doing so, the ALJ stated that his opinions were not support by objective findings. For example, there was no evidence that Dr. Ribaudo tested the Plaintiff's ability to sit or stand for extended periods, bend, stoop, reach or

perform fine finger manipulations. The ALJ also noted that Dr. Ribaudo had failed to provide any explanation or support for his opinion that the Plaintiff was significantly limited in her ability to perform repeated reaching, handling, fingering, or lifting, such as a grip strength test. No test showed that the Plaintiff suffered diminished grip or a limited range of motion of the upper extremity joints. The Plaintiff argues that repetitive use of the Plaintiff's upper extremities would put pressure on her injured spine and hip, but the fact remains that Dr. Ribaudo did not identify a single test that supported such a limitation or fill in the section of the Questionnaire asking him to explain these limitations.

The ALJ further noted that Dr. Ribaudo had not diagnosed any impairment that could reasonably be expected to result in the environmental limitations he identified: the need to avoid temperature extremes, humidity, gases, fumes, noise, and dust. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.")

It did not escape the attention of the ALJ that Dr. Ribaudo's report was internally inconsistent with respect to the standing and sitting restrictions. He reported that during an eight-hour work day, the Plaintiff could sit for 0-1 hours, but also indicated she could sit for up to 4 hours in an 8-hour work day. He stated that she could stand or walk for only 0-1 hours, and explained that the Plaintiff had to get up and move around every 10 minutes, and could then sit again after 40 minutes. The duration needed to move around before sitting again adds up to more walking and standing than 0-1 hours. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that

8

opinion."). In any event, the ALJ included in the Plaintiff's RFC the requirement for the option to sit or stand while working and no requirement to stand or walk longer than 50% of an 8-hour work day or prolonged walking or standing, consistent with the ALJ's statement that he was assigning some weight to Dr. Ribaudo's opinion. The ALJ's hypothetical to the vocational expert took into account these additional limitations to the range of light work the Plaintiff could otherwise perform.

The ALJ also took into account Dr. Ribaudo's assessment that the Plaintiff should be limited to low stress jobs and would require about four unscheduled breaks of 20-minute duration by identifying an RFC that required her work not demand close regimentation of work activity, but provide flexibility in the work structure to permit her to catch up with ordinary productivity, especially when there has been a respite.

One of the Plaintiff's arguments in support of assigned controlling weight to Dr. Ribaudo's opinion is that he is a specialist in physical medicine and rehabilitation. 20 C.F.R. § 404.1527(d)(2)(ii) (the more knowledge a treating physician has about a claimant's impairment, the more weight is given to that source's medical opinion); 20 C.F.R. § 404.1527(d)(5) (more weight is given to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist). However, the Plaintiff does not explain how this specialty supports giving controlling weight to the restrictions that the ALJ concluded were not supported by objective medical findings or diagnostic techniques.

Because the ALJ's Decision has allowed this Court to follow her "path of reasoning," *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000), and the Plaintiff's arguments amount to a request for this Court to reweigh the evidence and arrive at a different conclusion, *Nelson v.*

9

*Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), the Plaintiff's objections to the Magistrate Judge's affirmation of the ALJ's assessment of Dr. Ribaudo's opinion are overruled. However, because the ALJ was also required to consider the Plaintiff's subjective complaints regarding her symptoms and pain, and the Plaintiff takes issue with the ALJ's assessment of her credibility, this matter may still require a remand for further proceedings.

**B.     ALJ's Credibility Findings**

In assessing a claimant's credibility, the ALJ is required to support his finding with specific reasons, *see Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009), and reviewing courts defer to that determination unless it is found "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). When questioning an applicant's credibility as to symptoms of pain, the ALJ must follow specific requirements set forth in S.S.R. 96-7p. First, the ALJ decides whether the claimant has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain. *See* S.S.R. 96-7p; *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If such an impairment exists, but the claimant's statements about the intensity, persistence and limiting effects of the pain are not supported by objective medical evidence, the ALJ evaluates the effects of the complained-of pain on the individual's functional ability to work, taking into account the claimant's daily activities; his past work history and efforts to work; the dosage, effectiveness, and side effects of medication; the nature and intensity of the reported pain; medical evidence from treating physicians and third parties; medical evidence and laboratory findings; and the course of treatment. S.S.R. 96-7p; 20 C.F.R. § 404.1529(c); *see also Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Luna v. Shalala*, 22

F.3d 687, 691 (7th Cir. 1994). Although an ALJ may not ignore a claimant's subjective reports of pain or mental impairments simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803–04 (7th Cir. 2005).

Here, the ALJ noted that the Plaintiff claimed that she was not able to work due to the pain in her back, hip, and right heel and foot, and that her hip sometimes locked when she was walking. The Plaintiff testified that she could only stand for about 20 to 45 minutes before her hip and back started to hurt, and could only sit for about 45 to 60 minutes after standing, but had to get up or sit on the edge of the couch because she got stiff and her hip hurt. The Plaintiff claimed that she had a friend help her out of bed every day, and sometimes needed help getting out of a chair or the bathtub. She alleged three bad days per week when she could barely get up and had to cancel any appointments outside the home. On a typical day, she watched TV, washed dishes, and cooked for up to 5 to 10 minutes.

The ALJ wrote in his Decision that the Plaintiff's alleged symptoms could be caused by the Plaintiff's medically determinable impairments, but that her statements concerning the intensity, persistence, and limiting effects were not credible to the extent they were inconsistent with the RFC. In particular, the ALJ stated that the evidence did not support the extreme degree of pain the Plaintiff alleged given her daily activities, objective evidence that her heel injury was healing, and Dr. Ribaudo's notation that her symptoms were alleviated with medication. He also noted that she lived in a second-floor bedroom in a house where there is no banister or railing along the stairs.

The Plaintiff argues that when the ALJ noted that the Plaintiff was able to vacuum, wash

11

dishes, cook, and get up the stairs to her second floor apartment without a railing, he omitted significant qualifying information regarding her capacity to perform these activities. The Court agrees and finds that the ALJ did not build a logical bridge from the evidence to his conclusions when he ignored the Plaintiff's qualifying statement regarding her daily activities and living arrangements. The ALJ stated that the Plaintiff admitted to being able to "vacuum, wash dishes, and cook," and that she lived "in a second-floor bedroom in a house where there is no banister or railing along the stairs." (R. 29.) First, the ALJ does not indicate how performance of these activities was inconsistent with the level of pain the Plaintiff described suffering. *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (noting that washing dishes, cooking, and doing laundry are relatively minimal tasks that are "not of a sort that necessarily undermines or contradicts a claim of disabling pain"). There was no evidence, for example, indicating how often the Plaintiff was required to maneuver the stairs, or testimony that, when she did, it was not painful. Given that the ALJ used the second floor living arrangement as one of the reasons to undermine the Plaintiff's credibility, this would have been important information to have. Second, the ALJ did not acknowledge in his credibility assessment the testimony that she only performed these tasks restrictively. The Plaintiff testified that she vacuumed with a cane in one hand, could only wash dishes or cook for 5 to 10 minutes before she had to sit down because her hip hurt, she needed assistance to get up the stairs and sometimes to get out of a chair because her hip locked up and the stairs did not have a banister, and she had bad days when she could barely get out of bed and could not leave the house. Failure to discuss these limitations is problematic because there are "critical differences between activities of daily living and activities in a full-time job" because "a person has more flexibility in scheduling the former than

12

the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."); *Brown v. Barnhart*, 298 F. Supp. 2d 773, 795 (E.D. Wis. 2004) (noting that "[b]ecause the ability to work includes the ability to do sustained work activities on a regular and continuing basis, SSR 96–8p, plaintiff's alleged inability to function on certain days should have been considered"); *cf. Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012) (holding that the ALJ's credibility determination was not patently wrong where the claimant testified that he regularly completed daily household activities without any pain medication).

Here, the ALJ's assessment does not appear to account for the differences between activities of daily living and activities in a full time job, as it does not account for the three bad days a week when the Plaintiff barely gets out of bed, for the limited duration of her activities, or for the assistance she receives to engage in certain activities. And although the ALJ also cited Dr. Ribaudo's notation that the Plaintiff's symptoms were alleviated with medication as a reason to not fully credit the Plaintiff's testimony, he did not mention Dr. Ribaudo's statement that he was not able to completely relieve the pain with medication without unacceptable side effects. Social Security Rule 96-7p requires an ALJ to consider the type, dosage, effectiveness, and side effects of any medication.

The ALJ also cited to medical evidence that the Plaintiff's foot injury was healing as grounds to find that her statements concerning the intensity, persistence, and limiting effects of

13

her pain were not credible to the extent they were inconsistent with the RFC. However, he did not link the evidence regarding the condition of the Plaintiff's heal injury to her specific allegations of pain. Although the Plaintiff testified to having pain in her foot after walking for about 20 minutes, most of her testimony regarding pain was related to her hip and back locking up, and the mending of her foot has no bearing on those statements. It is unclear what particular statements the ALJ was discrediting due to the medical evidence that the Plaintiff's injury in her foot was healing, or how this impacted his determination of how many hours she could stand, walk, or sit during an 8-hour work day.

Often, the assessment of the claimant's ability to work depends, at least in part, on the credibility of the claimant's testimony regarding the intensity of her symptoms. *Bjornson*, 671 F.3d at 646; *see also Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011) ("RFC determinations are inherently intertwined with matters of credibility."). This appears to be such a case. More specific findings are needed to build a logical bridge between the evidence in the record and the ALJ's conclusion that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible and did not support more severe restrictions on the Plaintiff's ability to work. For this reason, remand is appropriate.

**CONCLUSION AND ORDER**

For the reasons stated above, the Court OVERRULES IN PART AND SUSTAINS IN PART the Plaintiff's Objections to the Report & Recommendations [ECF No. 15]. The Court MODIFIES the Report and Recommendation [ECF No. 14] as stated herein. The matter is REMANDED to the ALJ for further proceedings consistent with this Opinion and Order,

specifically as it relates to assessing the Plaintiff's credibility and determining her RFC.

SO ORDERED on June 12, 2013.

                                                         s/ Theresa L. Springmann
                                                       THERESA L. SPRINGMANN
                                                       UNITED STATES DISTRICT COURT
                                                       FORT WAYNE DIVISION